UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Robin Ryan,

    Plaintiff,

      v.

UMass Memorial Health d/b/a
UMass Memorial Medical Center d/b/a
UMass Hospital,

    Defendant.

Civil Action No.
23-40025-MRG

# MEMORANDUM & ORDER

**GUZMAN, D.J.**

## I. Introduction

This case is about a liver transplant candidate's request to be religiously exempt from her transplant hospital system's COVID-19 vaccine mandate. The transplant candidate, Plaintiff Robin Ryan, has brought federal and state law claims against UMass Memorial Health, UMass Memorial Medical Center, and UMass Hospital.[1] Defendant moved to dismiss the complaint. [ECF No. 16]. Plaintiff did not file an opposition.

---

[1] Defendant UMass Memorial Health Care, Inc. claims that these three purported entities were improperly named defendants and that they, instead, should have been the properly named Defendant. [ECF No. 17, p. 1, n. 1]. For purposes of this Order, the Court will refer to all of the named Defendants and UMass Memorial Health Care, Inc. as "Defendant" or "UMass."

1

For the reasons stated below, the Court **GRANTS** Defendant's motion as follows: Counts One and Three[2] are dismissed without prejudice. Further, since the Court declines to extend supplemental jurisdiction over Count Two, those claims are dismissed without prejudice also. See Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1777 (1st Cir. 1995) ("[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

II.     **Background**[3]

At the outset, the Court takes judicial notice that, starting in early 2020, the spread of the highly contagious novel coronavirus known as "COVID-19" had a dramatic impact on daily American life, generally, and on the country's healthcare system, specifically. See, e.g., Throw v. Kijakazi, No. 3:21-cv-170-JPK, 2022 U.S. Dist. LEXIS 178563, at *26 n.44 (N.D. Ind. Sept. 30, 2022) (taking judicial notice of the fact that "on March 13, 2020, the President of the United States declared a national emergency due to the COVID-19 virus. . ."); Conde v. Mid Hudson Reg'l Hosp. Med. Ctr., No. 22 CV 3085, 2024 U.S. Dist. LEXIS 8658, at *17 (S.D.N.Y. Jan. 12, 2024) (conducting an undue hardship analysis and considering, among other things, "the stress the COVID-19 pandemic placed on this country's healthcare system and the severity of illness suffered by patients hospitalized with COVID-19. . .") (citation to medical journal article omitted).

---

[2] Plaintiff's complaint does not contain a "Count Three," but instead skips from "Count Two" to "Count Four." To avoid any confusion here, the Court shall simply refer to Plaintiff's "Count Four" as "Count Three" throughout since it was the third count in succession.

[3] Except where otherwise noted, the following relevant facts are drawn from the complaint -- the factual allegations of which are assumed to be true. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). The Court has also considered those "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d, 59, 65 (1st Cir. 2008) (brackets in original and citation omitted).

On or about the year 2021, Plaintiff matched with a living liver transplant donor after spending over three years on a transplant waiting list. [ECF No. 1, ¶ 7]. Following the match, UMass notified Plaintiff that, as a transplant patient, she would be required to receive the COVID-19 vaccine. [Id. ¶ 8]. That same month, Plaintiff submitted a request to be exempted from this requirement, and Plaintiff's pastor sent a separate letter to UMass attesting to the sincerity of Plaintiff's religious objections. [Id. ¶¶ 9-10].

In particular, Plaintiff has alleged, among other things, that she "is a practicing Christian with strongly held beliefs about using products developed through the use of fetal tissue," and that she has "prayed about submitting to the COVID Vaccinations and believes she has received incontrovertible confirmation from the Holy Spirit that she should not receive the COVID Vaccinations." [Id. ¶¶ 57, 59]. Her conviction is so sincere that she is "willing to die" to defend these strongly held beliefs. [Id. ¶ 60]. In March 2022, UMass sent a letter, apparently in response to Plaintiff's exemption request, that requested her attestation to receiving other medications that had relied on fetal cell lines for their development and testing. [Id. ¶11; id., p. 30]⁴. UMass then informed Ryan, in person, that "not getting vaccinated will lead to you not being a liver transplant candidate," and that she should "get the shot and [] should talk to [her] minister." [Id. ¶¶ 11-12].

In response, Plaintiff retained "prelitigation" counsel who, in turn, further explained to UMass Plaintiff's religious objection and requested an exemption for her on that basis. [ECF No. 1, ¶ 13]. Her

---

⁴ Plaintiff references this letter by date (March 21, 2022) -- but did not attach a copy of it. The Defendant did attach a purported copy of the letter to their memorandum in support of their motion to dismiss. [ECF No. 17-1, pp. 1-3]. Since the authenticity of this document has not been challenged; Plaintiff referenced it explicitly it their complaint, and because its contents are central to Plaintiff's claim, the Court will consider the purported copy of March 21, 2022 letter in its motion to dismiss analysis. See, e.g., Alenci v. Hometown Am. Mgmt., LLC, No. 19-12244-LTS, 2020 U.S. Dist. LEXIS 85837, at *11, n. 7 (D. Mass. May 15, 2020) ("[o]n a motion to dismiss, courts may consider documents attached to the parties' filings – especially where the documents are referenced in the complaint and central to the plaintiff's claim – provided their authenticity is undisputed.") (citation omitted).

lawyer's letter addressed Plaintiff's objection to both the COVID-19 vaccine as well as many of the other medications referenced in the above-referenced March 21, 2022, letter from UMass to Plaintiff. [Id. pp. 28-35]. UMass responded on October 19, 2022, stating, "[t]he decision of the [hospital's transplant patient selection committee] is that you are no longer a candidate for a liver transplant at this center. The reason for this is due to the inability to adhere to post transplant management." [Id. p. 37]. The letter does not explicitly mention the Plaintiff's refusal to become vaccinated against COVID-19, but the Plaintiff understood this letter to be a denial of the religious exemption requested by her and her counsel.[5]

Plaintiff filed the instant suit in this Court alleging a violation of Title II of the Civil Rights Act of 1964[6] ("Count One"), a violation of Massachusetts General Laws Chapter 272 § 98[7] ("Count Two"), and a violation of 42 U.S. § 18116[8] -- which is also known as Section 1557 of the Affordable Care Act ("Count Three"). [Id. ¶¶ 115-147]. UMass moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on all three counts. [ECF No. 16]. Plaintiff did not oppose the

---

[5] The Court notes here that the parties apparently do not agree as to whether the requested religious exemption was granted or not. Although they did not attach any exhibits to directly prove this point, Defendant claims, "[i]n her Complaint, Plaintiff inexplicably fails to acknowledge that [Defendant] granted her religious exemption request. . ." [ECF No. 17, p. 1, n. 3]. Defendant claims that their decision to remove her from the transplant list was driven by the fact that Plaintiff refused to take other medicines that would have been necessary following the transplant. [Id. pp. 3-4].

However, at this stage of the litigation, the Court credits, as it must, Plaintiff's well-plead factual allegations. See, e.g., Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002) ("[w]hen presented with a motion to dismiss, the district court must take as true 'the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor.'") (brackets in original and citation omitted).

[6] "Title II."

[7] "M.G.L. Ch. 272 § 98."

[8] "Section 1557." See, e.g., Walker v. Azar, 480 F. Supp. 3d 417, 420 (S.D.N.Y. 2020) ("Section 1557 of the ACA (codified at 42 U.S.C. § 18116. . ."

motion.  Neither the complaint nor any of the documents attached to it contain any allegation that plausibly suggest that the Plaintiff has ever pursued these claims before the Massachusetts Commission Against Discrimination ("MCAD.")

### III. Legal Standard

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citation omitted). In order to survive a Rule 12(b)(6) motion, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). In this context, plausible "means something more than merely possible," Schatz v. Repub. State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted), and the pleadings must set forth allegations respecting each element necessary to sustain recovery under an actionable legal theory. Gagliardi v. Sullivan, 513 F.3d 301, 304 (1st Cir. 2008).

### IV. Application

#### a. Count One

Under Count One, Plaintiff alleges that Defendant violated Title II by, *inter alia*, enforcing its pre-transplant vaccine requirements in such a way that denied Plaintiff full and equal enjoyment of the hospital's services and by removing Plaintiff from the transplant list allegedly because of her religious practices. [ECF No. 1, ¶ 123].  At the heart of Count One is Plaintiff's argument that hospitals, like UMass, are places of "public accommodation" within the meaning of Title II. [Id. ¶ 41].

In relevant part, Title II provides that:

> "[a]ll persons should be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).

Title II also includes a notice provision, which provides that:

> [i]n the case of an alleged act or practice prohibited by this subchapter which occurs in a State . . . *which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority* to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, ***no civil action may be brought*** . . . *before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority…*" 42 U.S.C. § 2000a-3(c) (emphasis added).

The Commonwealth of Massachusetts has both a state law prohibiting the very sort of practices prescribed by Title II (specifically, M.G.L. Ch. 272 § 98) as well as a "State…authority" (specifically, MCAD) that has been charged with "grant[ing] or seek[ing] relief from such a practice." M.G.L. 98 Ch. 151B, §§ 5, 9 (MCAD's enabling statute). Accordingly, the Plaintiff was plainly required to comply with Title II's notice requirement before filing this lawsuit. See, e.g., Manning v. Whole Foods Mkt. Grp.. Inc., No. 21-cv-10833-ADB, 2022 U.S. Dist. LEXIS 11135, at *13-15 (D. Mass. Jan. 21, 2022) (dismissing plaintiff's Title II claim since there was no plausible evidence that they had provided the required notice to MCAD); Amaefuna v. Gamsby, No. 1:22-CV-00211-DCLC-SKL, 2023 U.S. Dist. LEXIS 50443, at *5-6 (E.D. Tenn. Mar. 24, 2023) ("[b]ecause [Plaintiff] did not file a written complaint alleging discrimination in a place of public accommodation with the Tennessee authorities charged with addressing such discrimination, this Court lacks jurisdiction to address his Title II claim.")

As noted, neither the Plaintiff's complaint nor any of the documents attached to it contain a plausible allegation suggesting that she filed a complaint with MCAD before initiating this action. Moreover, after Defendant raised this issue repeatedly in its memorandum in support of

its motion to dismiss [ECF No. 17], Plaintiff did not file an opposition in which it could have told this Court that this requirement had been met.

Accordingly, Count One is dismissed for failure to comply with Title II's notice requirement. See, e.g., Manning, 2022 U.S. Dist. LEXIS 11135, at *13-15; Amaefuna, 2023 U.S. Dist. LEXIS 50443, at *5-6.  Since Plaintiff did not comply with this threshold requirement, the Court lacks jurisdiction to address her Title II claim and it is therefore dismissed without prejudice.  See Amaefuna, 2023 U.S. Dist. LEXIS 50443, at *6, n. 3; Torres-Fuentes v. Motorambar, Inc., 396 F.3d 474, 475 (1st Cir. 2005) ("[d]ismissals for lack of jurisdiction should generally be without prejudice.") (citation omitted).

### b. Count Three[9]

Plaintiff's Count Three claim purports to arise under Section 1557, i.e. "42 U.S.C. § 18116(a)." [ECF No. 1, ¶¶ 140-144].[10]  Section 1557 provides, in relevant part:

> "an individual shall not, on the ground prohibited under [certain federal statutes] be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance. . ."42 U.S.C. § 18116(a).

In her Complaint, Plaintiff quoted from a portion of the relevant statutory text, but then boldly and erroneously inserted the term "of religion" in brackets following the phrase "on the ground. . ." [ECF No. 1, ¶ 142].  Plaintiff knew or should have known that none of the four federal statutes that Title IX incorporates by reference explicitly prohibit discrimination based on

---

[9] For reasons that are explained in the Court's treatment of "Count Two," the Court has intentionally dealt with the three counts out of order.

[10] Count Three also appears to restate that claim contained in Count One, which arose under Title II. [ECF No. 1, ¶¶ 145-147].  The Court need not and will not repeat its analysis of the Title II claim.

religion.[11]  Indeed, a Court in this District recently parsed through Section 1557 and listed the types of discrimination that these statutes explicitly protect against as those based on *race, color, national origin, sex, age, and disability*.  See Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth (BAGLY) v. United States HHS, 557 F. Supp. 3d 224, 230 (D. Mass. 2021).  As another Court recently and succinctly stated: "Religion is not a protected class for purposes of the ACA." Painadath v. Lattanzio, No. 22-3604, U.S. Dist. LEXIS 124005, at *9 (E.D. Penn. Jul. 19, 2023).

Plaintiff alleges the Defendant receives "federal financial assistance," and that, therefore, they violated her Section 1557 rights when they imposed upon her their pre-transplant vaccine requirements allegedly despite her religious objection.  This argument is a non-starter.  Despite Plaintiff's bold attempt to rewrite Section 1557, none of the incorporated federal statutes prohibit discrimination on religious grounds and her claims therefore fail on that ground alone.[12]

### c. Count Two

Having determined that the claims in Count One and Count Three must fall, and given that the Plaintiff's basis for this Court's subject matter jurisdiction was the purported presence of a federal question [ECF No. 1-2, p.1], the Court need not and will not exercise supplemental jurisdiction over Count Two, which is purely a state law claim – arising under Massachusetts' public accommodation discrimination statute – the aforementioned M.G.L. Ch. 272 § 98.  [ECF

---

[11] These include (1) Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), (2) Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), (3) the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), and (4) Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794).

[12] The Court reminds Plaintiff's counsel of their obligation under Rule 11 to ensure that all "legal contentions" contained in their pleadings are, among other things, "*warranted by existing law* or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2) (emphasis added).  Arguing for the extension of an existing law is one thing; pretending that it has already been extended is a very different matter.

No. 1, ¶¶ 127-139].  See Lambert v. Fiorentini, 949 F.3d 22, 29 (1st Cir. 2020) ("[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.") (citations omitted); United Mine Workers of Am. V. Gibbs, 383 U.S. 715, 726 (1966) ("pendent jurisdiction is a doctrine of discretion, not of plaintiff's right . . . [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties . . . if the federal claims are dismissed before trial . . . the state law claims should be dismissed as well.")

V.     Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss [ECF No. 16], and dismisses Count One, Count Two, and Count Three without prejudice.

**So Ordered.**                                             /s/ Margaret R. Guzman
                                                            United States District Judge

**March 31, 2024**